UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TABBY L., | NO. C18-5151-JPD |
| Plaintiff, | |
| v. | ORDER REVERSING AND REMANDING |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff appeals the final decision of the Commissioner of the Social Security

Administration ("Commissioner") which denied her application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a

hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court

ORDERS that the Commissioner's decision be REVERSED and REMANDED for further

administrative proceedings.

## I.    FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a thirty-four year old woman

with the equivalent of a high school education. Administrative Record ("AR") at 49. Her past

work experience includes employment as a tractor trailer truck driver and kitchen helper. AR

ORDER - 1

at 50, 69-7, 81. Plaintiff was last gainfully employed in 2013. AR at 56. She has been homeless for most of her adult life. AR at 74.

On October 22, 2014, plaintiff filed a claim for SSI payments. AR at 213-22. Plaintiff asserts that she is disabled due to attention deficient hyperactivity disorder ("ADHD"), fetal alcohol syndrome, depression, anxiety, Tourette's Syndrome, transsexualism, and post-traumatic stress disorder ("PTSD"). AR at 47-48.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 118-25, 145-47. Plaintiff requested a hearing, which took place on February 24, 2017. AR at 43-93.[1] On March 23, 2017, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform her past relevant work, or alternatively, a specific job existing in significant numbers in the national economy. AR at 15-26. Plaintiff's request for review was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On February 28, 2018, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 4.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] Plaintiff initially appeared for her hearing on October 14, 2016, but the hearing was postponed to allow her more time to find an attorney. AR at 35-41. During her initial hearing she told the ALJ she had previously been awarded SSI benefits in March 2008, but her benefits were terminated when plaintiff moved to Bolivia for a year to study abroad, prompting her to file this second application. AR at 39-40, 126-37, 307. During the second hearing, her representative told the ALJ that her SSI benefits had ceased when she was homeless but did not receive paperwork for her reevaluation and now had to restart the process. AR at 46.

ORDER - 2

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments,

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

ORDER - 4

she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe

impairment, the Commissioner moves to step three to determine whether the impairment meets

or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d),

416.920(d). A claimant whose impairment meets or equals one of the listings for the required

twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed

in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the

Commissioner evaluates the physical and mental demands of the claimant's past relevant work

to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If

the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

true, then the burden shifts to the Commissioner at step five to show that the claimant can

perform other work that exists in significant numbers in the national economy, taking into

consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§

404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the

claimant is unable to perform other work, then the claimant is found disabled and benefits may

be awarded.

## V.    DECISION BELOW

On May 23, 2017, the ALJ issued a decision finding the following:

1.    The claimant has not engaged in substantial gainful activity since October 22, 2014, the application date.

2.    The claimant has the following severe impairments: neurocognitive disorder not otherwise specified, attention hyperactivity disorder (ADHD), depression, anxiety disorder, and Tourette's syndrome.

ORDER - 5

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple routine tasks in a normal 8-hour workday with normal work breaks.  She is limited to no interaction with the public as a pai1of job tasks; and she is limited to brief interaction with coworkers and supervisors.

5.      The claimant is capable of performing past relevant work as a kitchen helper, DOT#318.687-010, medium, SVP 2.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

6.      The claimant has not been under a disability, as defined in the Social Security Act, since October 22, 2014, the date the application was filed.

AR at 17-25.

## VI.      ISSUES ON APPEAL

The principal issues on appeal are:

1.      Did the ALJ commit harmful error at step two?

2.       Did the ALJ err in evaluating the medical opinion evidence?

3.      Did the ALJ err at step three by finding that plaintiff's neurocognitive disorder did not meet Listing 12.11?

4.      Did the ALJ fail to sufficiently develop the record?

Dkt. 10 at 1; Dkt. 13 at 1-2.

## VII.      DISCUSSION

### A.      The ALJ Committed Harmful Error at Step Two

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work

ORDER - 6

activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or description of her physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). A claimant's own statement of symptoms alone is *not* enough to establish a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

Plaintiff has been diagnosed by Dr. Vasquez with PTSD, and counseled for transsexualism. AR at 368 (transgendered), 370 (transgendered), 393 (PTSD), 401-38. Plaintiff was born male and is pursuing gender reassignment. AR at 327, 330, 401, 411, 413, 440, 467. During Dr. Chau's detailed neuropsychological assessment, he noted plaintiff endorsed significant symptoms of PTSD. AR at 374. Numerous treatment notes throughout the record reflect that plaintiff has been deeply impacted by her gender identity issues her entire life, and plaintiff alleges that it has created a marked impact on her ability interact socially and to compose and conduct herself outside the home. AR at 65, 78-79, 356, 370-71, 374, 416, 418, 423. For example, numerous counseling notes reflect plaintiff's claims that without her estrogen she feels extremely out of place and angry. AR at 403. One of plaintiff's former counselors, who declined to provide statements regarding her current physical and/or mental state as she has not treated the plaintiff since December 2014, nevertheless opined that

at the time she conducted a psychological evaluation of plaintiff and treated her in fall 2014,

"she had working mental health diagnosis of Post-Traumatic Stress Disorder and Gender

Dysphoria." AR at 356. "She presented as scattered and highly anxious," and "often

misinterpreted information, missed scheduled appointments, and re-located shortly after

engaging in services." AR at 356.

The evidence in the record supports that PTSD and transsexualism were severe

impairments that needed to be considered and discussed by the ALJ at step two. *See Treichler*,

755 F.3d at 1102-03 ("the ALJ must provide some reasoning in order for us to meaningfully

determine whether the ALJ's conclusions were supported by substantial evidence."). An

impairment is severe where, beyond satisfying the medically determinable threshold, it affects

the individual's ability to perform basic work activities to more than a *de minimis* degree. *See*

20 C.F.R. 416.921; SSR 96-3p; SSR 96-4p; *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir.

2005). Here, the ALJ's analysis was as follows, "Other impairments are mentioned from time

to time, but they did not cause significant limitations in functioning, or did not last for a

continuous period of 12 months." AR at 17. Given the significant evidence of record

supporting limitations related to PTSD and plaintiff's lifelong transsexualism, the Court

declines to assume that the ALJ adequately accommodated (without comment) all the

limitations resulting from these severe impairments in the RFC assessment. *See Carmickle v.*

*Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) ("The ALJ is required to

consider all of the limitations imposed by the claimant's impairments, even those that are not

severe"). Indeed, it seems likely that if the ALJ had discussed these impairments at step two,

the ALJ would have likely included more restrictive social limitations in functioning, as well

as the need for extra time to learn new tasks, in the RFC. *See Robbins v. Comm'r of Soc. Sec.*

*Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("Because [the determination of plaintiff's

1   limitations and RFC] were flawed, the hypothetical posed to the vocational expert was legally

2   inadequate. Such a failure cannot be deemed harmless"); *Lingenfelter v. Astrue*, 504 F.3d 1028,

3   1041 (9th Cir. 2007) ("Nor does substantial evidence support the ALJ's step-five

4   determination, since it was based on this erroneous RFC assessment.").

5        As a result, this case must be remanded for the ALJ to reevaluate and discuss plaintiff's

6   diagnoses of PTSD and transsexualism at step two.  In addition, the ALJ should discuss what

7   additional limitations result from these impairments.

8        B.      The ALJ Erred in Evaluating the Medical Opinion Evidence

9         *1.     Standards for Reviewing Medical Evidence*

10       As a matter of law, more weight is given to a treating physician's opinion than to that

11   of a non-treating physician because a treating physician "is employed to cure and has a greater

12   opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d

13   747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating

14   physician's opinion, however, is not necessarily conclusive as to either a physical condition or

15   the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

16   *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining

17   physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

18   contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*,

19   157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough

20   summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

21   making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than

22   merely state his/her conclusions.  "He must set forth his own interpretations and explain why

23   they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22

24

(9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.

*Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2.     Jose Vasquez, Psy.D.

The ALJ gave greater weight to the opinions of the non-examining reviewing psychologists at the State agency, and little weight to the opinions of plaintiff's treating psychologist, Jose Vasquez, Psy.D., among the other examining physicians.  AR at 23-24.  As discussed in greater detail below, this was reversible error.

The ALJ accorded little weight to the treating source opinion of Dr. Vasquez.  AR at 23.  In October 2016, Dr. Vasquez noted plaintiff had been attending psychotherapy sessions

ORDER - 10

from August 2015 through the date of his assessment. AR at 393. He reported treating

plaintiff for several psychological issues that included, but were not limited to, post-traumatic

stress disorder (PTSD), Tourette's Syndrome, anxiety, and depression. AR at 393. Dr.

Vasquez's treatment notes from August 2015 through January 2017 reflected weekly visits

documenting that plaintiff's emotional state was up and down. He did not feel that plaintiff

would be able to hold a job for more than 2 to 3 months due to the combination of her

impairments. AR at 402. Dr. Vasquez felt that plaintiff's functional status was "somewhat

marginal." AR at 402. Dr. Vazquez's treatment notes consistently indicated plaintiff's

prognosis to be guarded. AR at 402-08, 410-34. The ALJ acknowledged Dr. Vasquez's

diagnoses, but simply stated that Dr. Vasquez "provided not (sic) opinion about the claiming's

ability to work." AR at 23.

As a threshold matter, the ALJ erred in failing to offer more than his conclusion in

rejecting Dr. Vasquez's diagnosis of PTSD. *See Treichler*, 775 F.3d at 1102-03 ("the ALJ

must provide some reasoning in order for us to meaningfully determine whether the ALJ's

conclusion were supported by substantial evidence"); *see also Brown-Hunter v. Colvin*, 806

F.3d 487, 495 (9th Cir. 2015) ("we cannot substitute our conclusions for the ALJ's or speculate

as to the grounds for the ALJ's conclusions. Although the ALJ analysis need not be extensive,

the ALJ must provide some reasoning in order for us to meaningfully determine whether the

ALJ's conclusions were supported by substantial evidence"). As discussed above, on remand

the ALJ shall discuss plaintiff's PTSD diagnosis, and any resulting limitations, in greater

detail.[3]

---

[3] The ALJ also failed to acknowledge Dr. Vasquez's opinion that plaintiff's prognosis
was guarded, her functional status was marginal, and that she would not be able to sustain
employment for more than a few months. AR at 23, 402-08, 410-34.

ORDER - 11

In addition, although the ALJ is correct that Dr. Vasquez did not initially provide a function-by-function opinion about claimant's ability to work, AR at 393, 401-38, such an opinion was provided to the Appeals Council. AR at 8-10. Specifically, plaintiff submitted a Medical Source Statement of Ability to Do Work-Related Activities (Mental) dated July 13, 2017, prepared by Dr. Vasquez, to the Appeals Council as part of her Request for Review of the ALJ's decision. AR at 8-11. The Appeals Council, after reviewing the statement, concluded the evidence did not provide a basis for changing the ALJ's decision but added it to the record nonetheless. AR at 1.

As this case is already being remanded, the Court need not determine whether, without more, Dr. Vasquez's functional assessment would have undermined the evidentiary basis for the ALJ's decision. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (*quoting Brewes v. Comm'r Soc. Sec. Admin.,* 682 F.3d 1157 1163 (9th Cir. 2012)). However, the Court finds that on remand, the ALJ must consider and specifically discuss Dr. Vasquez's July 2017 function-by-function assessment as the ALJ can no longer reject Dr. Vasquez's opinion because no such opinion was not provided. AR at 1-8, 393, 401-38. Specifically, Dr. Vasquez opined that for the period commencing on August 26, 2016, plaintiff would have marked limitations in her ability to understand and remember short simple instructions; to carry out short simple instructions, and understand and remember detailed instructions; and to interact appropriately with the public, supervisors, and coworkers. AR at 9. Dr. Vasquez further opined that plaintiff would have extreme limitations in her ability to respond appropriately to work pressures in a usual work setting; to respond appropriately to changes in routine work setting; to make judgments on simple work-related decisions; and to carry out detailed instructions. AR at 8-10. He also noted plaintiff was unable to maintain focus, was extremely

anxious, nervous, and had feelings of extreme insecurity.  AR at 9.  On remand, the ALJ must

consider and discuss his evidence, and also re-evaluate Dr. Vasquez's original opinion.

            *3.*        *Christina Diamonti, Psy.D.*

Christina Diamonti, Psy.D., examined plaintiff in February 2015.  Following a clinical

interview and mental status examination, Dr. Diamonti diagnosed plaintiff with a depressive

disorder, moderate, recurrent, anxiety disorder, NOS, Tourette's disorder, and rule out a

neurological impairment.  AR at 359-62.  Dr. Diamonti assessed plaintiff with marked

limitations in her ability to perform activities within a schedule; to maintain regular attendance;

to be punctual within customary tolerances; and to complete a normal workday and work week

without interruptions from her psychologically based symptoms.  AR at 360.  Dr. Diamonti

also found that vocational training or services would not eliminate barriers to employment.

AR at 361.

The ALJ assigned little weight to Dr. Diamonti's opinion because it was "not

completely consistent" with her exam findings, and that her assessed Global Assessment of

Functioning Score was based upon plaintiff's subjective reports.  AR at 23.  The ALJ then

solely referenced plaintiff's "intact memory and concentration on mental status exam," finding

it inconsistent with Dr. Diamonti's opinion.  AR at 23.  However, the ALJ did not consider any

other elements relevant to Dr. Diamonti's assessment, such as her clinical findings indicating

symptoms from plaintiff's Tourette's disorder and depressed mood were moderately severe

while symptoms from her anxiety and neurological impairments were markedly severe.  AR at

359.  Moreover, regardless of whether the ALJ accepted Dr. Diamonti's assessed GAF score,

the ALJ cannot reject Dr. Diamonti's opinion out of hand because she relied to some degree on

plaintiff's self-reported symptoms without identifying any specific inconsistencies.  *See Buck*

ORDER - 13

*v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("psychiatric evaluations may appear

subjective, but diagnoses will always depend in part on the patient's self-report

as well as on the clinician's observations. Thus, the rule allowing an ALJ to reject opinions

based on self-reports does not apply in the same manner to opinions regarding mental illness").

On remand, if the ALJ believes that Dr. Diamonti unreasonably relied on plaintiff's

self-reported symptoms that are less than credible, he must do more than simply dismiss Dr.

Diamonti's opinion out of hand.  For example, it is not at all clear why the ALJ rejected Dr.

Diamonti's opinion that plaintiff would have  limitations in her ability to perform activities

within a schedule, maintain regular attendance, and be punctual within customary tolerances

without supervision.  If the ALJ does not believe Dr. Diamonti's opinion is entitled to greater

weight, the ALJ should more thoroughly explain what self-reported symptoms he believes are

not supported by the record, and why.[4]

> ### 4.     *Huong M. Chau, Ph.D.*

Huong M. Chau, Ph.D. conducted a neuropsychological evaluation of plaintiff in

February 2016.  AR at 370.  Following an extensive evaluation, Dr. Chau diagnosed plaintiff

with a neurodevelopmental disorder, major depressive disorder, recurrent, attention

hyperactivity disorder, and a tic disorder.  AR at 374.  Plaintiff's testing revealed distinct

areas of strengths and weaknesses.  AR at 374.  For example, plaintiff had weaknesses in

processing speed, learning and memory.  AR at 374.  Plaintiff demonstrated difficulty with

acquisition of new information due to rapid forgetting and poor retention, whether the

information was presented orally or visually.  AR at 375.  Dr. Chau opined that plaintiff's

---

[4] As noted below, Dr. Diamonti's findings appear to be consistent with the opinions of Dr. Wheeler, who evaluated plaintiff as part of a prior successful SSI application; Dr. Chau, the examining neuropsychologist; and Dr. Vasquez, plaintiff's treating source.

cognitive disabilities had been longstanding and developmental in nature. AR at 375.

Plaintiff's other mental health co-morbidities added another layer of impairment that were

outside the scope of his evaluation indicating a need for further work-up. AR at 375.

Psychological testing revealed a profile associated with significant emotional distress and an

endorsement of multiple issues, including low mood levels, stress and anxiety, and somatic

complaints. AR at 375.[5] Dr. Chau also opined plaintiff should be able to take breaks as

needed to prevent fatigue. AR at 376.

The ALJ accorded Dr. Chau's assessment partial weight to the extent that his testing

indicated plaintiff had some cognitive deficits, but that they did not preclude all work activity.

AR at 24. The ALJ summarized Dr. Chau's finding that plaintiff would require

accommodations such as a reduced pace and extra time to effectively encode incoming

information; a solitary quiet room to learn; and the ability to take breaks as needed to be

successful in the work place. AR at 375-76. Finally, the ALJ noted that Dr. Chau

acknowledged that he was not considering other mental health issues. AR at 376.

The ALJ gave weight to Dr. Chau's assessment to the extent that Dr. Chau's testing

revealed some cognitive deficits, but "these deficits do not preclude all work activity. In fact,

Dr. Chau does not opine that the claimant is unable to work in any capacity." AR at 24. The

ALJ also compared Dr. Chau's assessment with the mental status examination findings of Dr.

---

[5] Dr. Chau opined that in a work setting it would be helpful for plaintiff to identify or find a trusted mentor who could provide her with guidance/direction and help her see the "forest through the trees" on projects as during the testing plaintiff's approach was to focus on individual details and neglect the larger "big picture" that could tie in the individual elements. AR at 375. Dr. Chau also thought plaintiff would benefit by slowing down and taking extra time to effectively encode incoming information, particularly if it involved complex or difficult-to-grasp concepts, that she should avoid multitasking and limit potentially distracting stimuli and interruptions by working/reading alone and in a quiet room whenever possible. AR at 375-76.

ORDER - 15

Diamonti, noting that plaintiff had intact memory and concentration during Dr. Diamonti's exam. AR at 24.

These were not specific and legitimate reasons for rejecting Dr. Chau's detailed findings. Dr. Chau's opinion was based on his professional interpretation of extensive objective testing, rather than a brief mini mental status examination. The ALJ's conclusory rejection of these more detailed test results, based upon the fact that plaintiff performed better on one other mental status exam in the record (especially in light of the fact that Dr. Diamonti considered plaintiff to be at least as limited as Dr. Chau found) is not reasonable. On remand, if the ALJ rejects aspects of Dr. Chau's opinion, the ALJ should provide specific and legitimate reasons, supported by substantial evidence, for doing so.

5.    *Kimberly Wheeler, Ph.D.*

Kimberly Wheeler, Ph.D., evaluated plaintiff in 2007 as part of plaintiff's prior successful application for SSI disability benefits. AR at 397-400. Dr. Wheeler diagnosed anxiety, psychotic disorder not otherwise specified (NOS), and a personality disorder, NOS. AR at 398. Dr. Wheeler assessed marked limitations in plaintiff's ability to understand remember, and follow complex instructions; marked limitations in her ability to relate appropriately to co-workers and supervisors, respond appropriately to and tolerate the pressures and expectations of a normal work setting, and control physical or motor movements and maintain appropriate behavior. AR at 399.

The ALJ rejected Dr. Wheeler's findings out of hand as being too remote in time, and did not provide any other analysis of her opinion. AR at 23. However, Dr. Wheeler's findings are arguably quite consistent with the more recent opinions of all the other treating and examining physicians in the record. On remand, the ALJ should consider whether Dr.

Wheeler's opinion, although somewhat remote in time, establishes that plaintiff's symptoms and limitations have been consistent since her prior grant of disability benefits.

      6.      *The ALJ Erred by Rejecting the Opinions of All Treating and Examining Physicians in Favor of the Non-Examining State Agency Physicians*

The State agency reviewing psychologists Michael Dennis, Ph.D. and Jaqueline Farewell, M.D., only reviewed the record through June 2015. AR at 24, 102, 116. After their review, plaintiff submitted the treatment records and opinion from her treating psychologist Dr. Vasquez, indicating additional impairments and greater limitations than the State agency reviewing psychologists found. AR at 393, 401-38. They also did not have an opportunity to review the February 2016 neuropsychological evaluation of Dr. Chau. AR at 370. In this case, the ALJ erred in relying on the opinions of the non-examining psychologists where they did not have the opportunity to consider these opinions. *See Garrison*, 759 F.3d at 1012. ("The weight afforded a non-examining physician's testimony depends 'on the degree to which [he] provide[s] supporting explanations for [his] opinions.'"). As noted above, Dr. Chau's assessment was arguably consistent with the earlier opinion of Kimberly Wheeler, Ph.D., as well as the opinions of Dr. Diamonti and Dr. Vasquez. Indeed, all of the treating and examining providers in this case found greater limitations in functioning than the State agency psychologists, particularly with her ability to sustain work on a regular and continuing basis. This is not a case, for example, where the State agency psychologists were in a unique position to provide a longitudinal picture of plaintiff's condition based upon their review of the record as a whole.

Because this matter is being remanded for further evaluation of the medical opinion evidence, the ALJ is further directed to re-review the opinions of the non-examining providers in accordance with the *Orn* hierarchy of medical evidence discussed above. Specifically, if the

ALJ is going to credit a State agency consultant who has never examined the plaintiff over the opinions of treating and examining providers, the ALJ must better explain how that opinion is more consistent with the record evidence. The ALJ should not, however, continue to cherry-pick the record by focusing on plaintiff's "intact memory and concentration on mental status exam in February 2015," and use a single normal test result to disregard all the abnormal results and diagnoses in the record. AR at 24. Because it was improper to rely upon the State agency psychologists' opinion in formulating plaintiff's RFC, the ALJ's assessment was not supported with substantial evidence or free of legal error. *See Lester*, 81 F.3d at 830-32; 20 C.F.R. § 416.927.

        C.       On Remand, the ALJ Shall Evaluate Whether Plaintiff Meets Listing 12.11

In light of the ALJ's erroneous evaluation of the medical evidence in this case, it is difficult to discern whether the ALJ also erred by finding that plaintiff does not meet Listing 12.11. During the administrative hearing, plaintiff's counsel argued that her neurodevelopmental disorder meets Listing 12.11. AR at 46-48. The ALJ did not specifically discuss why plaintiff does not meet this listing, apart from a general statement that plaintiff's mental impairments do not "meet or medically equal the Listings in section 12.00." AR at 18.

During the hearing, the ALJ commented several times that this may be a rare case where a supplemental hearing is necessary in order to have a medical expert testify regarding plaintiff's combination of impairments. AR at 79-80. However, the ALJ did not conduct a supplemental hearing, or solicit testimony from a medical expert. On remand, the ALJ shall more thoroughly evaluate the evidence relating to Listing 12.11. If the ALJ needs assistance analyzing the potential applicability of Listing 12.11 to plaintiff's case, he should call a medical expert to testify at the hearing.

1

VIII.   CONCLUSION

2       For the foregoing reasons, the Court ORDERS that this case be REVERSED and

3  REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

4  instructions.

5       DATED this 29th day of January, 2019.

6

7

_James P. Donohue_

8  JAMES P. DONOHUE
   United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER - 19